FILED
 2011 Mar-28 AM 08:36
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| ASHLEY W. LUTEN, | ) |
| | ) |
|     Claimant, | ) |
| | ) |
| vs. | )    Civil Action No. CV-10-S-1272-NE |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner, Social Security | ) |
| Administration, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Claimant Ashley Luten commenced this action on May 17, 2010, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ") denying her claim for a period of disability, disability insurance, and supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

(11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ erred by failing to consider her vulvodynia as a severe impairment, and by improperly considering the opinions of her treating physicians. Upon review of the record, the court concludes this contention is without merit.

The ALJ found that claimant had the severe impairments of fibromyalgia, partial IgA deficiency, depression, anxiety, and irritable bowel syndrome.[1] Claimant asserts that the ALJ also should have considered her vulvodynia[2] as a severe impairment. The Social Security regulations define a "severe" impairment as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). In her brief, claimant pointed out some common symptoms of vulvodynia, but she did not point to any evidence that the condition actually caused any impairment of her work-related functions. Similarly, while the ALJ observed that the medical records contained references to a "history of vulvodynia causing painful intercourse," he nonetheless found that "there is no indication that this is something new or that it would significantly impair

---

[1]Tr. 15.

[2]Vulvodynia is "chronic vulvar pain."   http://www.mayoclinic.com/health/vulvodynia/DS00159, last visited on March 25, 2011.

her ability to perform light work activity."³  The record supports this conclusion.

Claimant also argues that the ALJ failed to consider claimant's vulvodynia in combination with her other impairments in determining her residual functional capacity. Social Security regulations state the following with regard to the Commissioner's duty in evaluating multiple impairments:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 1523. *See also* 20 C.F.R. §§ 404.1545(e), 416.945(e) (stating that, when the claimant has any severe impairment, the ALJ is required to assess the limiting effects of *all* of the claimant's impairments — including those that are not severe — in determining the claimant's residual functional capacity). Here, the ALJ did determine that claimant suffered severe impairments. Further, a review of the ALJ's decision as a whole reveals that the ALJ considered all of claimant's impairments in combination when assessing claimant's functional limitations. He stated that he took

---

³Tr. 19.

"all of the evidence into account,"[4] and that claimant did not have "an impairment or combination of impairments" that met or medically equaled one of the listed impairments. Those statements are sufficient to indicate that the ALJ properly considered *all* of claimant's impairments, including vulvodynia. *See Wilson v. Barnhart,* 284 F.3d 1219, 1224 (11th Cir. 2002); *Jones v. Dept. of Health and Human Services,* 941 F.2d 1529, 1533 (11th Cir. 1991).

Finally, claimant asserts that the ALJ improperly considered the opinions of her treating physicians, Dr. Satish Cuddapah and Dr. Claude Kinzer. The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. Additionally, the ALJ is not required to accept a conclusory statement from a medical source — even a treating source — that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. § 416.927(e).

---

[4]Tr. 20.

Dr. Cuddapah completed a Physical Capacities Evaluation form on October 1, 2007. He indicated that claimant could lift and/or carry only 10 pounds, sit for a total of thirty minutes in an eight-hour work day, and stand and walk (combined) for a total of one hour in an eight-hour work day. Claimant could only occasionally perform pushing and pulling movements, climb, balance, bend, stoop, and reach, but she could frequently perform gross and fine manipulation. She could operate motor vehicles, but she could not work around hazardous machinery, dust, allergens, or fumes.[5] On a separate Clinical Assessment of Pain form, Dr. Cuddapah indicated that pain would be present to such an extent as to be distracting to adequate performance of daily activities, that physical activity would increase pain to such an extent that bedrest and/or medication would be necessary, and that the side effects of claimant's prescribed medication would completely prevent her from functioning at a productive level of work. He also indicated that claimant had an underlying medical condition consistent with the pain she experiences.[6]

The ALJ assigned only little weight to Dr. Cuddapah's assessment, because the doctor "only examined the claimant a couple of times and did not find much on examinations. Further, his assessments are inconsistent with the claimant's own

---

[5]Tr. 411.
[6]Tr. 412-13.

report of daily activities and treatment records as already noted."[7] These conclusions are in accordance with applicable law, and are supported by substantial evidence of record.

Dr. Kinzer completed a Physical Capacities Evaluation Form on October 11, 2007. He indicated that claimant could lift and/or carry only ten pounds, that she could sit for a total of only three hours in an eight-hour workday, and that she could stand and walk (combined) for a total of only two hours in an eight-hour workday. Claimant could only occasionally perform pushing and pulling movements, climb, perform gross manipulation, bend, stoop, and reach, but she could frequently perform fine manipulation. Claimant could operate motor vehicles, but she could not work around hazardous machinery, dust, allergens, or fumes.[8] On a separate Clinical Assessment of Pain form, Dr. Kinzer indicated that pain was present to such an extent as to be distracting to adequate performance of daily activities or work, that physical activity would greatly increase pain to such a degree as to cause distraction from or abandonment of tasks, and that claimant would experience side effects from her prescribed medication sufficient to distract from work, but not sufficient to "create serious problems in most instances."[9] Dr. Kinzer also indicated that claimant had an

---

[7] Tr. 20.
[8] Tr. 416.
[9] Tr. 417-18.

underlying medical condition consistent with the pain she experiences.[10]

The ALJ also assigned little weight to Dr. Kinzer's assessments,

> because those restrictions are not supported by his or the balance of the treatment records either. In addition, the undersigned notes that Dr. Kinzer stated that the side effects of medications would not be expected to create serious problems in most instances; this at least is consistent with treatment records showing little if any reports of adverse side effects of medication . . . . Updated treatment records from Dr. Kinzer since July 2007 show good physical examinations and with the exception of the exacerbation documented from at most November 2008 to 2009 nothing that should result in such severe restrictions.[11]

As with Dr. Cuddapah, the ALJ's findings with regard to Dr. Kinzer's assessments are in accordance with applicable law and supported by substantial evidence of record.

Claimant also objects to the ALJ's consideration of the August 22, 2007 state agency medical consultant's opinion. That consultant indicated that claimant could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for a total of six hours in an eight-hour work day, and sit for a total of six hours in an eight-hour work day.[12] She could never climb ladders, ropes, or scaffolds, but she could frequently climb ramps or stairs. She could only occasionally stoop, kneel, crouch, and crawl, but she could frequently balance. Her ability to reach was limited, but her

---

[10]Tr. 418.
[11]Tr. 20.
[12]Tr. 390.

abilities to handle, finger, and feel were unlimited. Claimant was advised to avoid all exposure to hazards such as machinery and heights, and to avoid concentrated exposure to extreme cold, but she could have unlimited exposure to extreme heat, wetness, humidity, noise, vibration, fumes, odors, gases, and poor ventilation.[13] The ALJ afforded the opinion of the state agency consultant significant weight because it was "consistent with all the medical records to that date, as well as the records since then."[14] That decision was in accordance with applicable law and supported by substantial evidence. Specifically, the state agency consultant noted that, on clinical examination, claimant had demonstrated normal gait, normal use of hands and arms, full range of motion in all joints, no joint tenderness, full strength in all muscle groups, full ability to lift her legs, and full ability to squat and walk on heels and toes.[15] Finally, the court is not persuaded by claimant's argument that the ALJ should not have given significant weight to the state agency consultant's opinion, because much additional medical evidence was added to the record after the date of the consultant's assessment. The ALJ acknowledged that the state agency consultant's opinion was consistent not only with the medical evidence that existed at the time, but also the medical evidence that was submitted after the date of the assessment.

---

[13] Tr. 391-93.
[14] Tr. 20.
[15] Tr. 396.

Further, the court notes that the state agency consultant's opinion was issued less than two months before the assessments of claimant's treating physicians, which claimant asserts to be binding. The weight of the medical evidence did not shift significantly between August 22, 2007 and early October of 2007.

Based on the foregoing, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 28th day of March, 2011.

_____
United States District Judge